No. 35,364

ROSCOE BELL, *Appellant*, v. THE HALL LITHOGRAPHING COMPANY, *Appellee.*

(121 P. 2d 281)

Opinion filed January 24, 1942.

*J. W. Blood, F. W. Prosser,* both of Wichita, *E. W. Francis* and *E. S. Francis,* both of Topeka, for the appellant.

*Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey* and *Robert E. Russell,* all of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The petition in this action stated two causes of action. After the answer of the defendant and the reply of the plaintiff had been filed the trial court sustained a motion of the defendant for judgment on the pleadings as to the first cause of action. The plaintiff appeals.

The first cause of action alleged that the defendant was a corporation and was engaged in the manufacturing business. It then described the building in which the defendant's business was located, especially the elevator in the rear of the building, and the means for goods being unloaded from trucks in the rear, and placed in the defendant's buildings. It stated that there was an elevator in the

rear of this building, the entrance to which was guarded by a gate which moved up and down, depending on whether the elevator was on a level with the particular floor.

The petition then stated that for the purpose of effecting such unloading of freight into the wareroom, the freight elevator would be moved so that its floor would be on a level with the loading dock; the freight would be moved from the vehicle in the alley across the loading dock onto the freight elevator, and the freight elevator would then be lowered a few feet to the level of the floor of the wareroom and the freight removed to the wareroom.

It further stated as follows:

"The plaintiff states for a long time prior to August 30, 1937, much freight was delivered to the defendant at the said manufacturing establishment to go into its wareroom and was delivered from the alley across said loading dock onto the freight elevator and thence to the said wareroom in the manner above described, all at the request of the defendant and with notice to and knowledge of the defendant, its officers, agents, servants and employees, of such method of delivery of freight."

The petition then stated that the plaintiff on August 30, 1937, was in the employ of the Santa Fe Trail Transportation Company, a carrier of freight by vehicles, and that—

"Among other work helped in the delivery of freight consigned to the defendant at its said manufacturing establishment and carried thereto by said last-named company. That the unloading and delivering of such freight was made in the manner above stated and the plaintiff was employed and labored in such manufacturing establishment for the purpose of delivering such freight and doing the work and service herein mentioned in connection with such delivery, all at the request and with notice to and knowledge of the defendant, its agents, servants and employees. That in delivering said freight, plaintiff aided in unloading the same from the vehicle in the alley across said loading dock upon the elevator and in the removal of the freight from the elevator to the said wareroom in the method herein stated."

The petition then stated that there were two iron doors which plaintiff had to close after he had delivered freight to the plaintiff, and that he entered the building of defendant for the purpose of closing the iron doors at the request of and with notice to and knowledge of defendant, its agents, servants and employees.

The petition then contained some allegations as to the position of the gate which barred the entrance to the elevator and that unknown to plaintiff the elevator was not in a position of being level with the floor upon which he was standing, and the elevator gate was not in a position to prevent his entrance into the elevator shaft, and that he

attempted to enter the elevator having noticed that the gate was up and being, therefore, caused to think the elevator was on a level with the floor, and that the elevator was not on a level with the floor so that he fell to the bottom of the elevator shaft and was injured. The petition then contained this allegation—

"Plaintiff states that the work of closing and barring the loading dock doors on the inside and the method of going upon the elevator in order to do so, which was attempted by the plaintiff, was incidental to the work of the plaintiff in connection with the delivery of the freight at such establishment in which the plaintiff had just aided and was to render a service for and to do work and labor for the defendant."

The petition then alleged the injuries which the plaintiff sustained and that the opening of the wareroom into the shaft was not properly enclosed, as provided by G. S. 1935, 44-101 to 44-108, so as to protect the plaintiff in his work in the establishment of the defendant, and that the failure to exercise care to have this opening to the shaft properly enclosed and secured so as to protect the person employed or laboring in this establishment caused the injury.

The position of plaintiff is that he alleged facts which stated a cause of action under G. S. 1935, 44-105, known as the factory act.

Under count 2 the plaintiff set out about the same facts as to the building and the manner in which freight was loaded and unloaded from vehicles in the alley and that on account of the negligence of the defendant he walked into the open shaft, fell to the bottom of the shaft and sustained injuries. This cause of action is referred to throughout the brief as a common-law action.

For answer to the petition in the first cause of action, the defendant alleged that it failed to state a cause of action because it alleged that the gate failed to open and that the failure to operate was not under the factory act, which provided only that the physical equipment be maintained by the company, and that negligent operation of it did not constitute a cause of action under the act even if it occurred.

The answer further alleged that plaintiff was an employee of the transportation company at all of the times mentioned and had been awarded compensation against the transportation company by the workmen's compensation commission for the injury alleged; that the defendant had contracted with the transportation company to transport and deliver freight to it, and that when delivered to the plant the transportation company was to stack the freight in its storeroom and on various floors of the plant, and it was agreed that

the employees of the transportation company should enter the plant of defendant and take supplies and material from it and unload it on the trucks of the transportation company; that this was the ordinary operation of the plant of defendant and was necessary to be done. The answer then alleged:

"While said employees of the Santa Fe Trail Transportation Company were working in the plant of defendant, defendant being subject to the provisions of the compensation act of the state of Kansas, it became responsible as principal contractor to plaintiff herein for compensation in case said Santa Fe Trail Transportation Company was unable to pay such compensation. That as a result thereof, plaintiff herein cannot maintain an action under the 'factory act' against this defendant, and his only remedy against this defendant is under the workmen's compensation act of the state of Kansas."

The answer of the defendant to the second cause of action will not be noted in this opinion because the court overruled the motion of the defendant as to this count and no appeal was taken.

For a reply to the answer of defendant as to the first cause of action, the plaintiff admitted that he was an employee of the transportation company and that he had made claim and received compensation under the workmen's compensation act as an employee of that company. The reply alleged that the transportation company was a common carrier and dealt with the defendant as a common carrier and that he was its employee in this building in serving defendant, and the reply also admitted that defendant had contracted with the transportation company as a common carrier of goods to transport merchandise, but denied that the contract provided for the stacking of the goods around the plant of defendant, and that in taking supplies from the plant of defendant the employees of the Santa Fe Trail Transportation Company should enter the plant of defendant and take them from the floors on which they were located and load them in trucks of the transportation company, and that this was an ordinary operation of the plant of defendant and was necessary to be done.

The reply denied that in taking any goods from defendant's plant the employees of the transportation company took them from any place except the storeroom of the defendant and denied that the transportation of goods was an ordinary operation of the plant of defendant.

The defendant filed a motion for judgment on the pleadings on the ground that under the allegations of the petition the only claim the plaintiff had against the defendant was under the workmen's com-

pensation act, and the pleadings showed that the plaintiff had made claim for and been awarded compensation under that act. The trial court sustained this motion and gave judgment as to the first cause of action but overruled the motion as to the second cause of action.

The plaintiff has appealed from that judgment.

The first cause of action was drawn upon the theory that it could be brought pursuant to the provisions of G. S. 1935, 44-504. That section provides, in part, as follows:

"When the injury or death for which compensation is payable under this act was caused under circumstances creating a legal liability against some person other than the employer to pay damage, . . . such employer may enforce in his own name, or the name of the workman, the liability of such other party for their benefit as their interests may appear."

Plaintiff argues that G. S. 1935, 44-101 to 44-105, makes the defendant here liable because it failed to keep the elevator shaft enclosed and that he was laboring in the establishment of the defendant when he fell down the elevator shaft—hence, this action can be prosecuted in his name for the benefit of himself and the transportation company, by whom he was employed. (See G. S. 1935, 44-504.)

In *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868, a cement company had contracted with an ice company whereby it furnished some employees and some machinery to do some blasting work for the ice company. One of these employees was injured while doing this work and made a claim for compensation against both the cement company and the ice company. Compensation was allowed against the cement company as a general employer and against the ice company as a special employer. They both appealed, each urging that the other was the one against whom the claim should have been made. This court held in a well-considered opinion, which examined the authorities from this and other jurisdictions, that the claim could be made against both the cement company as general employer and the ice company as the special employer. We are not concerned with the holding in that case to the effect that both the special and the general employer were liable for compensation, but we are concerned with the holding that the special employer was liable for compensation even though the workman injured was the regular employee of another company and was not on the pay roll of the special employer. If that rule be held to

apply. here then the plaintiff could have made a claim for compensation against the defendant.

This court will look at all the circumstances involving each case to determine the actual relationship of the parties. (See *Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120.)

We have set out the allegations of the petition describing the relationship between plaintiff and defendant in some detail. The plaintiff stated about as clearly as could be that his work was to move the freight from the loading dock to the wareroom at the request of defendant; that he was employed in the establishment of defendant for that purpose; and that his work was to render a service for and to work and labor for the defendant. There are several tests that may be applied in determining whether one person is the employee of another. One of them is, Whose work is being done? In *Jones v. Getty Oil Company*, 92 F. 2d 255, the court said:

"8. In determining whether workman became special employee of person for whose benefit workman's general employer directed workman to work, controlling factor in whose work was being performed, and authority to determine work to be done and manner of work necessarily includes right to suspend or terminate work altogether or possibly to exclude workman from the job, but does not include right to discharge workman from service of his general employer or to actually give directions to workman.

"9. In determining whose work is being done, as test of whether workman becomes special employee of person for whose benefit workman's general employer directed work to be done, power to control work is merely evidentiary and not conclusive, though important, and identity of person who directs details of work and instructs workmen is unimportant compared to power of controlling work as a whole."

Here there is a positive statement that the work of plaintiff was being done for defendant. Another test is whether the person sought to be charged as employer had the right to direct the manner in which the work would be carried on. The petition contains the positive statement several times that the work was done in the way it was done at the request of defendant. The petition in this case alleged that the lithographing company was operating a factory— hence, it was under the compensation act. (See G. S. 1935, 44-505.)

It is clear that under the allegation of the petition the plaintiff could have claimed and been awarded compensation from defendant on account of his injury.

This conclusion springs from the zeal the courts have shown to safeguard the rights of the injured workman. He must never be in

a position where through some action of his regular employer he may not know against whom he should make a claim for compensation.

Our next question is what effect should be given the fact that plaintiff could have claimed and received compensation from the defendant company had he chosen to do so.

We find the answer to that question in G. S. 1935, 44-501. The second sentence of that section reads as follows:

"Save as herein provided, no such employer shall be liable for any injury for which compensation is recoverable under this act."

In *Echord v. Rush*, 122 Kan. 260, 251 Pac. 1112, this court reviewed the authorities that had interpreted that provision, and held:

"The remedy afforded by the workmen's compensation law is exclusive, where the employer and employee are voluntarily operating under its provisions, and the injury to the workman relied upon arose out of and as a result of such employment on the premises."

Of like import is the holding in *Smith v. Cement Co.*, 94 Kan. 501, 146 Pac. 1026. In that case the action was brought under the factory act. The defendant contended that the compensation act was the exclusive remedy of the employee. The court held that such was not true in that particular case because the employer had elected not to come under the act. However, this court said:

"It has been determined that an injured employee has no other remedy against his employer than that given by the workmen's compensation act where both have elected to accept its provisions. (*Shade v. Cement Co.*, 92 Kan. 146, 139 Pac. 1193.) The factory act, however, is not repealed. It remains in full force, but it cannot be invoked by an employee to whom the benefits of the workmen's compensation act are available, and who has actively or passively signified his acceptance of his benefits. The workmen's compensation act clearly contemplates that compensation for injury to a workman shall be made under its provisions only where both the employer and the employee have elected to be governed by it." (p. 503.)

See, also, *Employers Liability Assurance Corporation v. Matlock*, 151 Kan. 293, 98 P. 2d 456; also, *Jennings v. Kansas Power and Light Co.*, 152 Kan. 469, 105 P. 2d 882.

Under all the circumstances pleaded in the petition of plaintiff the remedy provided him by the compensation act was exclusive and the motion for judgment on the pleadings as to the first cause of action was correctly sustained.

The judgment of the trial court is affirmed.

HARVEY, THIELE and ALLEN, JJ., concur in the result.